**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**The Estate of Ana Mendieta Collection, LLC**
                                        Plaintiff,

**v.**

**Edward Meringolo and Sotheby's, Inc.**
                                        Defendants.

---

No. 20 Civ. 1841

**COMPLAINT**
**Jury Demand**

Plaintiff the Estate of Ana Mendieta Collection, LLC ("the Estate of Mendieta" or "Plaintiff") by and through their attorney, Barbara T. Hoffman, for their complaint against Defendants Edward Meringolo ("Meringolo" or "Consignor") and Sotheby's, Inc. ("Sotheby's") (collectively "the Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

This is an action for replevin and conversion against Edward Meringolo, who consigned to Sotheby's, Inc. a photograph by Ana Mendieta ("Artist"), titled *Guanaroca (Esculturas Rupestres [First Woman Rupestrian Sculptures])* ("the Artwork"), and against Sotheby's, by the Estate of Mendieta. The Estate of Mendieta demanded the return of the Artwork from the Defendants, and both refused to return the Artwork to the Estate of Mendieta, notwithstanding that no documentary evidence was presented to the Defendant Sotheby's that the Defendant Consignor was a good faith purchaser or that the Artist had gifted or sold the Artwork.

1

**PARTIES**

1.      Plaintiff the Estate of Ana Mendieta Collection, LLC ("the Estate") is a limited liability company formed under the laws of the State of Florida, with an address of 17201 SW 90th Avenue, Palmetto Bay, FL 33157. The Estate preserves the legacy of the celebrated Cuban American visual and performance artist Ana Mendieta ("the Artist"), best known for her "earth-body" artwork, by protecting her intellectual property rights and managing her artwork through sales, acquisitions, publications, and exhibitions. Ana Mendieta was born in Havana, Cuba in 1948 and died tragically in New York, New York in 1985. The member managers of the LLC are the sister of the Artist, Raquelin Mendieta, who is domiciled in Florida, and the niece of the Artist, Raquel Cecilia Mendieta, who is domiciled in New Jersey.

2.      Defendant Edward Meringolo is an individual, upon information and belief domiciled in Georgia with a residence in New York.

3.      Sotheby's, Inc. is a New York corporation with its principal place of business at 1334 York Avenue, New York, NY 10021. Sotheby's is engaged in the business of brokering and facilitating sales of, among other things, fine and decorative art, jewelry, real estate, and collectibles. The company provides *inter alia* auction services, corporate art services, and private sales services.

**JURISDICTION AND VENUE**

4.      This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of costs and interests, and because the action has complete diversity between citizens of different states.

5.      Personal jurisdiction and venue over this action lies within this District pursuant to 28 U.S.C. § 1391(b) because (i) all of the Defendants transact their affairs in the Southern District of New York and/or (ii) a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in the Southern District of New York, and have committed tortious acts without the state that injured the Plaintiff in New York.

6.      This Court has personal jurisdiction over Defendants pursuant to New York CPLR § 301 and § 302(a).

## FACTS

7.      The Artist created the Artwork in 1981, and it was subsequently exhibited at A.I.R. Gallery, New York in November 1981.

8.      On or about October 21, 1982, an art historian Rebecca D. Ballenger ("Ballenger") invited the Artist to participate in an exhibition curated by her, titled "Exchange of Sources: Expanding Powers" ("the Ballenger Exhibition").

9.      In the Plaintiff's archives is the letter of request from Ballenger, as well as Ballenger's telephone number in the Artist's handwriting (see Exhibit A attached hereto).

10.      In a letter from Ballenger to the Artist dated December 2, 1982, Ballenger thanked the Artist for accepting the invitation, updated her on the Ballenger Exhibition, and noted that Ballenger planned to coordinate the pickup of the Artwork from the Artist in January 1983 (see Exhibit B attached hereto).

11.      In a letter from Ballenger to the Artist dated July 5, 1983, Ballenger informed the Artist that the Artwork was in storage in California (see Exhibit C attached hereto). The Ballenger Exhibition at its first venue in California had ended, and the Ballenger Exhibition was

3

not yet scheduled to open at the next venue in California, causing the Artwork with other works of art to be placed in storage.

12.     In a letter from Ballenger to the Artist dated September 15, 1983, Ballenger provided an update on the Ballenger Exhibition catalogue and the venues and dates, which spanned September 1983 through June 1984. The letter is attached hereto as Exhibit D.

13.     Text from the exhibition catalogue about the Artist was enclosed with the September 15, 1983 letter, and is attached hereto as Exhibit E.

14.     From September through October 1983, the Artwork was exhibited at the second venue at California State University in Los Angeles.

15.     In October 1983, the Artist was awarded a Prix de Rome fellowship and began a residency at the American Academy in Rome.

16.     In January 1984, the Artwork was exhibited at the University of Tennessee, Knoxville.

17.     In June 1984, the Artwork was on view at the last venue, Real ArtWays in Hartford, Connecticut, after which the Artwork should have by terms of the loan agreement been returned to the Artist, as is customary.

18.     In August 1984, the Artist's residency at the American Academy ended, but she continued to rent a studio on the grounds of the American Academy in Rome.

19.     In August 1985, the Artist returned to New York.

20.     On September 8, 1985, the Artist tragically fell from the window of her apartment in New York and died at the age of 36.

21. The Artist's husband, sculptor Carl Andre, was charged with second degree murder and acquitted in 1988. The story is documented in the book *Naked by the Window: The Fatal Marriage* (1990) by Robert Katz.

22. The mother of the Artist, who was domiciled in Iowa, inherited the Artist's estate by interstate succession. On her death it passed to the Artist's sister, who formed the Estate of Ana Mendieta Collection, LLC, the Plaintiff herein, and transferred the Artist's estate to it.

23. Upon information and belief, on or about November 13, 2018, Meringolo and Sotheby's entered into a consignment agreement for the potential sale of the Artwork. A copy of the catalogue entry for the Artwork is attached hereto as Exhibit F.

24. Plaintiff's gallery, Galerie Lelong, regularly monitors auctions and the internet for sales of the Artist's works of arts and copyright infringement. Galerie Lelong learned from viewing Sotheby's catalogue on the internet that the Artwork was offered for sale in the April auction.

25. Plaintiff was aware that the Artwork was missing from the possession of the Estate of Mendieta because of an inventory taken after the Artist's death, but believed that it was in the possession of Carl Andre, or that it would resurface. As Galerie Lelong wrote on February 13, 2019 to Sotheby's Assistant Vice President Andrea Zorrilla: "The Estate realized sometime after Mendieta's death that the photograph had gone missing but hoped that it would resurface as had other works of Mendieta's that were returned from other possessors. Receiving the information from Sotheby's is the first time that the gallery and the Estate were aware that the work had been found. Under these circumstances and in accordance with New York State Law, we require that the work be pulled from the April sale and returned to the Estate of Ana Mendieta, which has title to the work as the original owner..."

26.     In February 2019, the Estate contacted Sotheby's *inter alia* requesting information about the provenance of the Artwork, and in particular information on the consignor.

27.     There was nothing in either the chronology of the Ballenger Exhibition, nor in the Artist's practices, which would lead to the conclusion that the Artist would have given an important work to a curator who included a single work by the Artist in a group show.

28.     As the Galerie Lelong wrote in the February 13, 2019 letter to Sotheby's: "It was not in Mendieta's practice to regularly give her works to people as gifts; there are many close friends of the artist who never received works in this manner. Therefore, we do not believe she would have given an important work to a curator who included a single work in a group show. Ms. Ballenger did not curate a major retrospective, nor was she a close friend of the artist. In addition, Mendieta kept meticulous records including the correspondence she received and records of sales or gifts made. In these records, there are only a few letters from Ms. Ballenger discussing the plans for the exhibition, and there is no documentation whatsoever to reflect a gift of this work. No documentation to support the claim that this work was gifted has been provided by Ms. Ballenger or by the current owner."

29.     In a letter to Plaintiff from Sotheby's dated March 13, 2019, Sotheby's wrote *inter alia*: "It is our understanding from the Consignor that Ms. Ballenger was selling her home along with some of its contents last year. The Consignor purchased the work at that time, and Ms. Ballenger handwrote and signed a receipt detailing that she sold the work to the current owner, as well as how she came to own the work originally. The Consignor knew of the house sale and the Mendieta being available because he has a good friend who lives near Ms. Ballenger.

30.     Upon information and belief, Sotheby's relied only on hearsay and did not exercise due diligence as is customarily exercised, in checking with IFAR and Interpol to confirm the Artwork's provenance, or asking for receipts documenting payment, the Deed of Gift, the Certificate of Authenticity, and other documentation.

31.     Notwithstanding numerous demands by Plaintiff's attorney for documentation of any transfer by the Artist to Ballenger and documentation of the sale by Ballenger to Meringolo, neither Sotheby's nor Meringolo has provided the customary proof of provenance via gift or sale. No evidence has been provided to indicate how Meringolo became aware of the sale by Ballenger, nor any indication and proof of payment.

32.     Neither Sotheby's nor Meringolo has provided a (i) Deed of Gift, (ii) Certificate of Authenticity or (iii) representations of due diligence on the part of Sotheby's or Meringolo.

33.     On March 28, 2019, Plaintiff's attorney wrote to Sotheby's, stating: "To date, there is no evidence, documentary or otherwise, to establish that Ana Mendieta gifted the work to Ms. Ballenger. Ms. Ballenger could not convey good title to the consignor. That inability to convey good title is further confirmed by the fact that no specific title to the Mendieta work was conveyed to the consignor who also has no documentary evidence to suggest good title. Therefore, I reaffirm that in my opinion Sotheby's has no right to return the work to the consignor."

34.     On August 7, 2019, Sotheby's wrote to Meringolo's counsel Mr. Brendan F. Baynes, stating that "Sotheby's will retain possession of the Property until all issues regarding this claim have been resolved, either by written agreement among the parties or a final, non-appealable order from a court of competent jurisdiction."

35. Defendant Sotheby's, and Meringolo's counsel, have refused to provide the address of Meringolo.

## AS AND FOR A FIRST CAUSE OF ACTION
### Replevin

36. Plaintiff repeats, realleges, and incorporates paragraphs 7 through 35 as if set forth fully and completely herein.

37. Plaintiff is the owner of all unsold works of art by the Artist and all copyrights in and to works of art by the Artist. The Artwork is an unsold work of art by the Artist, and is owned by the Plaintiff. Plaintiff is entitled to recover sole and immediate possession of the Artwork.

38. Plaintiff, as the owner of the Artwork, demanded its return in July, October and November 2019. The Defendants have failed and refused to deliver the Artwork to Plaintiff.

39. Plaintiff has no adequate remedy at law.

40. By virtue of the foregoing, Plaintiff is entitled to the Artwork's immediate return.

## AS AND FOR A SECOND CAUSE OF ACTION
### Conversion

41. Plaintiff repeats, realleges, and incorporates paragraphs 7 through 35 as if set forth fully and completely herein.

42. Plaintiff is the owner of the Artwork, and entitled to recover sole and immediate possession of the Artwork.

43. Plaintiff demanded the return of the Artwork in July, October and November 2019. The Defendants have failed and refused to deliver the Artwork to Plaintiff.

44. The Defendants have converted and appropriated the Artwork in complete disregard and derogation of the Plaintiff's right, title, and interest to the Artwork.

8

45.    As a direct and proximate result of the aforesaid wrongful actions, Plaintiff has suffered damages in an amount based on the current fair market value of the Artwork, to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in its favor and Order that the Defendants immediately return the Artwork to Plaintiff, to be returned at the sole cost and expense of the Defendants; and for such other and further relief, including reasonable attorney's fees, as the Court deems just and reasonable.

March 2, 2020                            Respectfully submitted,

                                         By: _____

                                         Barbara Hoffman, Esq. (BH 8931)
                                         The Hoffman Law Firm
                                         330 West 72nd Street
                                         New York, New York 10023
                                         (212) 873-6200

                                         Attorney for Plaintiff